UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARCUS L. HARDY,

        **Plaintiff,**

        **v.**

                                       **Civil Action 2:20-cv-4097**
                                       **Judge James L. Graham**

**COMMISSIONER OF SOCIAL**              **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

        **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Marcus L. Hardy ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Period of Disability, Disability Insurance, and Supplemental Security Income Benefits.  This matter is before the Court on Plaintiff's Statement of Errors (ECF No. 16), the Commissioner's Memorandum in Opposition (ECF No. 18), Plaintiff's Reply (ECF No. 19), and the administrative record (ECF No. 13).  For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## I.      BACKGROUND

Plaintiff filed his applications for Title II Period of Disability and Disability Insurance Benefits and Title XVI Supplemental Security Income Benefits on April 12, 2017, alleging that he had been disabled since February 15, 2017.  (R. 225, 231.)  On January 31, 2019, following administrative denials of Plaintiff's applications initially and on reconsideration, a hearing was held before Administrative Law Judge Jeannine Lesperance (the "ALJ").  (*Id.* at 37–84.)

Plaintiff, represented by counsel, appeared and testified.  Vocational expert George W. Coleman,

III (the "VE") also appeared and testified at the hearing.  On April 25, 2019, the ALJ issued a

decision denying benefits.  (*Id.* at 16–32.)  On June 22, 2019, the Appeals Council denied

Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final

decision.  (R. 1–3.)  Plaintiff then timely commenced the instant action.  (ECF No. 1.)

In his Statement of Errors (ECF No. 16), Plaintiff asserts a single contention of error:

that the ALJ's decision to discredit portions of consultative examiner Stephen J. Meyer, Ph.D.'s

expert mental health opinions is not supported by substantial evidence.

## II.    THE ALJ'S DECISION

On April 25, 2019, the ALJ issued a decision finding again that Plaintiff was not disabled

within the meaning of the Social Security Act.  (R. 16–32.)  At step one of the sequential

evaluation process,[1] the ALJ found that Plaintiff had not engaged in substantial gainful activity

since his alleged disability onset date of February 15, 2017.  (*Id.* at 19.)  At step two, the ALJ

---

[1] Social Security Regulations require ALJs to resolve a disability claim through a five-step
sequential evaluation of the evidence.  *See* 20 C.F.R. § 404.1520(a)(4).  Although a dispositive
finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th
Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the
      criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20
      C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his
      or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual
      functional capacity, can the claimant perform other work available in the national
      economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009);
*Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

found that Plaintiff has the severe impairments of remote history of gunshot wound in the 1ight

calf, with residual symptoms; remote left hand crush injury, with residual symptoms; depression;

anxiety; post-traumatic stress disorder; and cannabis use disorder.  (*Id.*)  She further found at step

three that Plaintiff did not have an impairment or combination of impairments that met or

medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P,

Appendix 1.  (*Id.*)  At step four of the sequential process, the ALJ set forth Plaintiff's residual

functional capacity ("RFC")[2] as follows:

> After careful consideration of the entire record, I find that the claimant has the
> residual functional capacity to lift/carry/push/pull 20 pounds occasionally and 10
> pounds frequently using primarily the right dominant hand with the left to assist;
> frequently climb ramps and stairs; frequently crouch; occasionally use foot controls
> with the right lower extremity; frequently handle and finger, occasionally feel, and
> occasionally operate hand controls with the left hand; never climb ladders, ropes,
> or scaffolds, crawl, or work in extreme cold; and he can perform simple routine
> tasks at an average pace without strict time or production demands; interact
> occasionally with others but work duties should not require him to work with large
> groups of unfamiliar members of the public (defined as 20 or more at one time);
> interaction should be limited to the straightforward exchange of information
> without negotiation, persuasion or conflict resolution; and he can adapt to
> occasional changes in duties that are explained or demonstrated.

(*Id.* at 21.)

At step five of the sequential process, the ALJ, relying on the VE's testimony, found that

Plaintiff was capable of making a successful adjustment to other work that existed in significant

numbers in the national economy.  (*Id.* at 31.)  The ALJ therefore concluded that Plaintiff was

not disabled under the Social Security Act.  (*Id.* at 31–32.)

### III.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations."  20
C.F.R. § 404.1545(a)(1).

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C.

§ 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486

F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must

"'take into account whatever in the record fairly detracts from [the] weight'" of the

Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to

that finding 'even if there is substantial evidence in the record that would have supported an

opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v.

Callahan*, 109  F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the

substantial  evidence standard, "a decision of the Commissioner will not be upheld where the

SSA fails to  follow its own regulations and where that error prejudices a claimant on the merits

or deprives  the claimant of a substantial right."  *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742,

746 (6th Cir.  2007).

## IV.    ANALYSIS

Plaintiff asserts a single contention of error: that the ALJ's decision to discredit portions

of consultative examiner Stephen J. Meyer, Ph.D.'s expert mental health opinions when crafting

Plaintiff's RFC is not supported by substantial evidence.  (Statement of Errors 7, ECF No. 16.)

Specifically, Plaintiff contends that the ALJ's discussion of the supportability and consistency of Dr. Meyer's opinion was lacking. (*Id.* at 8–11.) The undersigned disagrees.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id*. The governing regulations[3] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). When evaluating medical opinions, an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-

---

[3] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

supported . . . and consistent with the record . . . but are not exactly the same, [the ALJ must]

articulate how [he or she] considered the other most persuasive factors . . . ."

§§ 404.1520c(b)(3); 416.920c(b)(3).

Plaintiff was evaluated by consultative examiner Stephen Meyer, Ph.D., on June 21,

2017.  (R. 325–30.)  The ALJ provided the following discussion of Dr. Meyer's evaluation and

opinions, finding the bulk of Dr. Meyer's opinions persuasive, with the exception of his opinion

that Plaintiff could not manage even minimal social demands in an ordinary work setting:

> After evaluating the claimant, consulting psychologist Dr. Steven J. Meyer
> diagnosed the claimant with major depressive disorder, single episode, moderate
> and adjustment disorder, with anxiety.  Based on his clinical evaluation, Dr. Meyer
> placed the claimant's estimated functioning in the upper borderline range, and
> noted that he may have some difficulty sustaining this level of functioning in an
> unstructured setting.  Dr. Meyer provided that despite his alleged ongoing physical
> conditions and limits along with psychological distress, the claimant has the
> cognitive capacity to understand remember, and carryout simple and moderately
> complex routine instructions and tasks.  Dr. Meyer further provided that tasks that
> would increase his expectation of sustained performance or strict pace requirements
> would likely increase his psychological distress and somatic concerns, but he would
> be able to perform adequately in a setting without strict production requirements
> with some additional assistance available as needed at times of performing new
> tasks.  Additionally, Dr. Meyer concluded that tasks that would increase his
> expectation of even minimal social demands would likely increase his
> psychological distress and somatic concerns considerably and he would not be
> expected to manage even minimal social demands in an ordinary work setting
> without serious increases in psychological distress and adaptive limitations.  Dr.
> Meyer also noted that tasks that would increase his expectation of sustained interest
> or multiple changes in routine would likely increase his psychological distress and
> somatic concerns considerably, but he would be expected to be able to manage a
> low stress work setting for tasks that are within any physical conditions with some
> additional assistance available as needed at times of change in routine (Ex. 2F).
>
> Dr. Meyer is a licensed psychologist, and his opinion is the result of his own
> observations, clinical interview, and mental status evaluation.  However, I find his
> opinion is not fully persuasive.  Although Dr. Meyer found the claimant had the
> cognitive capacity to understand remember, and carryout simple and moderately
> complex routine instructions and tasks, I find the claimant is more appropriately
> limited to simple routine tasks in order to further decrease his exposure to work
> stressors given his documented deficits in managing stressors and mood issues (Ex.
> 5F).  I find Dr. Meyer's opinion regarding strict pace and production requirements
> persuasive and adopt them.  I find his conclusion that the claimant could not manage

even minimal social demands in an ordinary work setting unpersuasive and therefore do not adopt this conclusion. The claimant was able to interact effectively with his treating psychological sources as well as with Dr. Meyer and consultative physician Dr. Whitehead. Moreover, as noted above, the claimant presented to the hearing with no observable social difficulty, he was polite, cooperative, and did not appear to have any problems interacting with the other participants or answering questions. The claimant has also endorsed the ability to socialize with family, go shopping in stores, use the bus, and care for his children (Ex. 7E and Testimony). Moreover, it is significant to note that the claimant was not on, and had never been on, any psychotropic medications at the time of Dr. Meyer's evaluation and did not seek any treatment for his mental impairments until September 2017; progress notes from the claimant's mental health treatment show significant improvement in his symptomology with medications (Ex. 5F). While I have established significant social limitations in the mental residual functional capacity above, they are not as limiting as the limitations established by Dr. Meyer, which suggested the claimant was incapable of any socialization in the workplace. Finally, Dr. Meyer's opinion with respect to the claimant's ability to respond appropriately to work pressures and changes in routine is persuasive, and I have accommodated his conclusions in the above mental residual functional capacity with respect to pace, socialization, complexity, and adaptation.

(R. 28–29.)

The undersigned finds no error with the ALJ's consideration of Dr. Meyer's opinions. The ALJ appropriately explained that Dr. Meyer's opinion that Plaintiff could not manage even minimal social demands was neither supported by nor consistent with the record. The ALJ's decision to not include Dr. Meyer's extreme social functioning limitation in Plaintiff's RFC was therefore supported by substantial evidence.

First, as to supportability: As noted by the ALJ, Dr. Meyer's opinions were based on his own observations, clinical interview, and mental status evaluation; yet Dr. Meyer's own report reflects that Plaintiff was able to interact effectively with Dr. Meyer, that Plaintiff had never taken any medication for his psychological impairments, and that Plaintiff had not previously sought mental health counseling. (R. 28, 325–30.) In other words, Dr. Meyer's social functioning limitation was not supported by the information and observations in his own report. Thus, although the ALJ may not have used the term "supportability," the ALJ's discussion

7

satisfied the requirements of §§ 404.1520c and 416.920c as to the supportability of Dr. Meyer's extreme social functioning limitation.

Similarly, the ALJ provided adequate discussion of the consistency between Dr. Meyer's social functioning limitation and the remaining evidence of record.  Namely, the ALJ pointed out that Plaintiff interacted appropriately with other treatment providers and examiners, presented at the hearing with no observable social difficulty, and endorsed the ability to socialize with family. (R. 28.)  Further, the ALJ noted that progress notes from mental health treatment Plaintiff received after his evaluation with Dr. Meyer demonstrate significant improvement in his mental health symptoms with medication. (R. 28, 342.)  This discussion satisfied the requirements of §§ 404.1520c and 416.920c as to the consistency of Dr. Meyer's extreme social functioning limitation.

In sum, the Court concludes that the ALJ's discussion of the supportability and consistency factors satisfied the articulation requirements of §§ 404.1520c and 416.920c and that the ALJ's supportability and consistency analysis was supported by substantial evidence. Although Plaintiff cites other record evidence that may have supported a more limited RFC, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

## V.    DISPOSITION

In sum, from a review of the record as a whole, the Court concludes that substantial evidence supports the ALJ's decision denying benefits.  For the foregoing reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

**PROCEDURE ON OBJECTIONS**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).   A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE